U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 13 2016

TONY R. MOORE, CLERK
BY: _____M3_____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| LA'TAVIS LAWSON | DOCKET NO.: 1:15-cv-00512 |
| VERSUS | |
| | JUDGE DEE D. DRELL |
| JANSSEN PHARMACEUTICALS, INC., ET AL. | MAG. JUDGE PEREZ-MONTES |

### SEALED MEMORANDUM RULING

Before the court is a motion for summary judgment (Doc. 24) filed by Janssen Pharmaceuticals, Inc., Johnson & Johnson and Janssen Research and Development, L.L.C. ("Defendants"). The motion, which Plaintiff, La'Tavis Lawson, opposes, has been appropriately briefed and is ripe for decision. For the reasons explained below, the court finds the Defendants' motion for summary judgment should be **GRANTED**.

I.   BACKGROUND

   **1. Factual Background**

On March 8, 1996, Plaintiff's foster mother brought him to see Peter Milder, M.D., a family practice physician in Alexandria, Louisiana. (Doc. 33-1, p.8, 19). Her chief complaint was hyperactivity and her description of Plaintiff's disruptive, violent and destructive behavior indicated he also suffered from a conduct disorder and a disruptive disorder. (Id. at 19-20).

Dr. Milder continued to treat Plaintiff from March 8, 1996 through March 7, 2008 for various illnesses but frequently saw him in the office to manage his Attention Deficit Hyperactivity Disorder (ADHD) and accompanying disorders. (Id. at 19-20, 32, 59, 64). Over the years, Dr. Milder switched or altered Plaintiff's medications to ensure his symptoms were properly treated.

(Id. at 26-27). Each time, he considered various factors such as: the type of medication to prescribe, whether and how to scale the dosage when medication intended for an adult was prescribed for a child, whether the medication was prescribed for an off label use, what – if any – risks were associated with the medication, and whether the risks outweighed the benefits for prescribing the medication. (Id. at 14-16, 51, 60-61). Dr. Milder's decision to prescribe Risperdal to treat Plaintiff's conduct disorder was no exception.

On October 13, 2000, Dr. Milder prescribed Risperdal to Plaintiff for the first time. After a month of use, there was no change in his behavior, so the Risperdal was discontinued. (Id. at. 43). Dr. Milder continued to treat Plaintiff with other medications for a couple of years and in August 2002 decided to try Risperdal again as Plaintiff's conduct disorder and risk-taking behavior escalated. (Id. at 47). Dr. Milder continued to monitor Plaintiff's behavior and the effectiveness of Risperdal on his symptoms. At times he would increase dosing or completely eliminate the medication depending upon the Plaintiff's behavior and symptoms at the time. (Id. at 47-55). Each time, Dr. Milder conducted his risk/benefit analysis weighing the risks of Risperdal on Plaintiff's health, including the possibility of gynecomastia. (Id. at 41-43, 61, 63). At no time during any of these visits did Plaintiff complain of or did Dr. Milder note the existence of enlarged breasts or gynecomastia. (Id. at 50-58).

Plaintiff left the care of Dr. Milder in March of 2008 and entered a group home in Baton Rouge around that time. According to Plaintiff's medical records, he continued to use Risperdal from March 2008 until early 2010. ((Doc. 33). During his residency at the group home Plaintiff was teased about having "breasts like a woman." (Doc. 33-1, p. 50-58 and 28-5, p. 37). Specifically, a staff-member by the name of Ms. George suggesting he change medications because he had "breasts like a woman." (Doc. 28-5, p. 37, 39). Though he initially did not believe

2

Ms. George and blamed his enlarged breasts on eating too much, Plaintiff eventually asked his doctor to change his medication. (Id. at 37, 40, 67-68). Plaintiff simply wanted to change his medication because he knew there might be a link between Risperdal and his enlarged breasts (Id. at 42). Plaintiff gave no more thought to the matter until approximately 2014 when he saw a television commercial indicating Risperdal was recalled and those who took it might have a lawsuit. (Doc. 28-5, p. 46).

Plaintiff filed suit on March 4, 2015 alleging that he developed gynecomastia[1] as a result of ingesting drugs that were designed, developed, researched, manufactured, tested, promoted, advertised, marketed, sold and/or distributed by the Defendants, including: Risperdal® (risperidone), Risperdal Consta® (a long-lasting injectable form of risperidone), Invega® (paliperidone) and/or Risperidone ("Risperdal").

### 2. Procedural Background

Defendants filed a motion to exclude the plaintiff's expert witness, Timothy P. Moran, M.D. on the same day the instant motion for summary judgment was filed. (Doc. 25). An order granting that motion was filed on this date.

### II. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We consider all evidence 'in the light most favorable to the party resisting the motion.'" Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir.2011)

---

[1] Gynecomastia is the growth of abnormally large breasts in males due to the excess growth of breast tissue, not excess fat.

3

quoting Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir.1983).  However, the nonmoving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted).  It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

### III.    ANALYSIS

#### A. Prescription

Louisiana Civil Code article 3492 provides:

> Delictual actions are subject to a liberative prescription period of one year.  This prescription commences to run from the day injury or damage is sustained.  It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

Defendants assert that Plaintiff first gained constructive knowledge of his alleged injury in late 2009 or early 2010 when he determined that Risperdal might be connected with his breast enlargement and he sought a change in medication. ((Doc. 28-5, p.42).  When injury or damage is not immediately apparent, the doctrine of *contra non valentem agere nulla currit praescriptio* tolls prescription until the plaintiff has actual or constructive knowledge of the tortious act.  See Eldredge v. Martin Marietta Corp, 207 F.3d 737, 743 (2000); Brown v. R.J. Reynolds Tobacco Co., 52 F.3d 524, 527 (5th Cir.1995); Grenier v. Medical Engineering Corp., 243 F.3d 200, 204 n. 2 (5th Cir.2001); Boyd v. B.B.C. Brown Boveri, Inc., 656 So.2d 683, 686 (La.1995).  Such knowledge has been defined as "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry."  National Council on Compensation Ins. V. Quixx Temporary Serv., Inc., 655 So.2d 120, 124 (La.1995).

4

Plaintiff acknowledged that he knew there might be a link between Risperdal and his enlarged breasts. (Doc. 28-5, p. 38, 42). This knowledge was sufficient to excite attention and prompt further inquiry. His statement that he was "too young" to know there was truly a link is an inadequate excuse for his failure to make an inquiry. (Id. at 42). He knew enough to seek a change in medication, yet he made no effort to ask any of his doctors about it or make any other inquiry into the matter.[2] (Id. at 69).

Even if the minor tolling period were applicable, which we do not find[3], Plaintiff still failed to make an inquiry within a year of his 18th birthday.[4] Instead, he waited until 2014 to investigate the connection between Risperdal and his breast enlargement and until March 4, 2015 to file this lawsuit. Accordingly, we find this case prescribed.

**2. Causation**

Even if this case has not prescribed, the Defendants' motion should still be granted as Plaintiff cannot establish that his alleged gynecomastia was caused by his use of Risperdal.

An essential element of proof in this case is medical causation: whether Plaintiff's alleged gynecomastia in 2009 was caused by his use of Risperdal. Under Louisiana law, expert medical testimony is required when a conclusion regarding medical causation is not one within common knowledge. Chavers v. Travis, 902 So.2d 389, 395 (La.App. 4th Cir.2005); Johnson v. E.I DuPont deNemours & Co., Inc., 7 So.3d 734, 740 (La.App. 5 Cir.2009); see Lasha v. Olin Corp., 625 So.2d

---

[2] Even as of the date of his deposition, Plaintiff had not seen a doctor regarding his enlarged breasts. (Doc. 28-5, p.42). In fact, plaintiff can point to nothing in his medical records to establish the existence of enlarged breasts or a diagnosis of gynecomastia (Doc. 28-5, p. 42).
[3] Article 3492 provides in relevant part: "[i]t does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act..." There are no allegations and certainly no proof that Plaintiff was permanently disabled.
[4] Plaintiff turned 18 on December 7, 2010.

1002, 1005 (La.1993). It is not within one's common knowledge that Risperdal caused Plaintiff's alleged gynecomastia; thus, expert medical testimony is required to prove medical causation.

As detailed in a separate order issued on this date, we granted Defendants' motion to exclude plaintiff's expert, Timothy P. Moran, M.D. Plaintiff has no other expert medical testimony to offer and the time frame in which to obtain another expert has passed. Accordingly, Plaintiff is without evidence to establish an essential element of proof which is fatal to his case. Therefore, it should be dismissed.

### 3. "Defect" under the LPLA

**Defective Composition and Defective Design**

In the oft cited case of Stahl v. Novartis Pharmaceuticals Cop., 283 F.3d 254 (5th Cir. 2002), the Fifth Circuit stated:

> To maintain a "construction or composition" defect claim under the LPLA, a plaintiff must establish that, at the time the product left the manufacturer's control, "the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La.Rev.Stat. Ann. §9:2800.55. … Proving a design defect or a "construction or composition" defect is not a prerequisite to establishing a failure-to-warn claim. Even if a product is not defectively designed or constructed, a manufacturer "may still have a duty to warn consumers about any characteristic of the product that unreasonably may cause damage." Grenier v. Med. Eng'g Corp., 243 F.3d 200, 205 (5th Cir.2001).

Id. at 261. Plaintiff repeatedly advances his bald assertions that Defendants' drugs were defective in composition and/or defective in design; however, he fails to provide any substantive allegations or evidence in his opposition to the motion for summary judgment that the Risperdal he received was defective in composition or defective in design at the time it left the defendants' control. Accordingly, this claim lacks merit.

**Inadequate Warning**

Louisiana applies the learned intermediary doctrine to products liability claims involving prescription drugs. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 265 (5th Cir.2002). Under the doctrine, the plaintiff must show that: (1) the defendant failed to warn or inadequately warned the physician of a risk associated with the product that was not otherwise known to the physician and (2) this failure to warn was both a cause in fact and the proximate cause of plaintiff's injury. Id. (citing Willett v. Baxter Int'l, Inc., 929 F.2d 1094, 1098 (5th Cir.1991).

Plaintiff has not provided evidence on either prong of this test, and the record evidence weighs against his position. First, Dr. Peter Milder stated that despite the fact he never met a Risperdal sales representative, he knew the warning associated with its use, including gynecomastia which was rare. He further stated it was a risk he weighed when determining whether to prescribe Risperdal to his patients, including Plaintiff. (Doc. 33-1, p.41-43, 61, 63).

Second, as previously stated, there is no medical testimony which the plaintiff can produce establishing a cause in fact or proximate cause of Plaintiff's alleged gynecomastia. Accordingly, Plaintiff cannot establish a claim for inadequate warning.

4. **Exclusivity Provision**

Plaintiff concedes that La.Rev.Stat. §9:2800.52 establishes the exclusive theories of liability for manufacturers for damages caused by their products. Accordingly, his claims for breach of warranty of fitness for ordinary use, breach of implied warranty of merchantability and fitness, negligence, and strict liability are not cognizable.

Plaintiff does not concede that his redhibition claim is precluded by the LPLA and we agree. There is an exception to the LPLA which allows a plaintiff to recover purely economic loss in redhibition, that is, the cost of the product. See Pipitone v. Biomatrix, 288 F.3d 239, 251 (5th

Cir.2002); DeAtley v. Victoria's Secret Catalogue, 876, So.2d 112, 115-116 (La.App. 4th Cir.2004). However, to establish a claim for redhibition, a plaintiff must prove that the thing has a redhibitory defect. As Plaintiff cannot show the Risperdal he was prescribed and consumed was in any way defective, his claim lacks merit and should be dismissed.

IV. **CONCLUSION**

After review of the law and argument advanced by the parties as well as the evidence submitted in this matter, the court finds that the Defendants, as movants herein, amply demonstrate their entitlement to judgment as a matter of law.

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
December 13, 2016

_____
DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT