U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

DEC 16 2016

TONY R. MOORE, CLERK
BY: _____
       DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| LA'TAVIS LAWSON | DOCKET NO.: 1:15-cv-00512 |
| VERSUS | |
| | JUDGE DEE D. DRELL |
| JANSSEN PHARMACEUTICALS, INC., ET AL. | MAG. JUDGE PEREZ-MONTES |

## ORDER

Before the court is a motion to exclude plaintiff's expert, Timothy P. Moran, M.D., (Doc. 25) filed by Janssen Pharmaceuticals, Inc., Johnson & Johnson and Janssen Research and Development, L.L.C. ("Defendants"). The motion has been appropriately briefed and is ripe for decision. For the reasons explained below, the court finds motion should be **GRANTED**.

### I.   BACKGROUND

Plaintiff filed suit on March 4, 2015 alleging that he developed gynecomastia as a result of ingesting drugs that were designed, developed, researched, manufactured, tested, promoted, advertised, marketed, sold and/or distributed by the defendants, Risperdal® (risperidone), Risperdal Consta® (a long-lasting injectable form of risperidone), Invega® (paliperidone) and/or Risperidone ("Risperdal"). Gynecomastia is the growth of abnormally large breasts in males due to the excess growth of breast tissue, not excess fat.

To support his claim and to distinguish true gynecomastia from fatty breast enlargement present in obese individuals, Plaintiff retained Dr. Moran as an expert in endocrinology. Dr. Moran provided a report on May 27, 2016 setting forth the following opinions: (1) Risperdal can cause gynecomastia in patients who take it long term; (2) Plaintiff developed gynecomastia in 2009 due to his use of Risperdal; and (3) Plaintiff's worsening gynecomastia in 2015 was not caused by

Risperdal use. Defendants contend that these opinions were not based on reliable evidence nor are they the product of accepted, reliable methodology. Accordingly, Dr. Moran's opinions should be excluded.

II.   LAW AND ANALYSIS

Under Federal Rule of Evidence 702, an expert witness "may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The United States Supreme Court, in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), described a trial judge's "gatekeeping" role under Fed. R. Evid. 702 to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589.

In determining whether expert testimony is reliable, a trial judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid." Knight v. Kirby Inland Marine, Inc., 482 F.3d 347, 352 (5th Cir. 2007) (citing Daubert, 509 U.S. at 592–93). The Supreme Court has specified several non-exclusive factors to guide courts in making a reliability determination: (1) whether the expert's theory can or has been tested, (2) whether the theory has been subject to peer review or publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community." Daubert, 509 U.S. at 593–94.

The Daubert reliability analysis is flexible, meaning that "not every Daubert factor will be applicable in every situation." Guy v. Crown Equipment Corp., 394 F.3d 320, 325 (5th Cir. 2004)

(citing Kumho Tire v. Carmichael, 526 U.S. 137, 151 (1999)). Accordingly, district courts "have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire, 526 U.S. at 152. The focus of the analysis, however, "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595. Ultimately, the party offering the expert must prove by a preponderance of the evidence that the testimony or evidence is reliable. See Johnson v. Arkema, Inc., 685 F.3d 452, 459 (5th Cir. 2012).

Defendants argue Dr. Moran's report and opinions are based solely on an assumption that Plaintiff suffered from gynecomastia in 2009. In response, Plaintiff argues that it was he who supplied Dr. Moran with his medical history, "including the development of gynecomastia in 2009", and "a medical history provided by a patient is generally considered reliable". (Doc. 27, p. 2-3) (Citation omitted).

According to Dr. Moran's records, Plaintiff reported a group home "worker" telling him he should change his medicine because he was "growing breasts". (Doc. 27-2, p.34 and Doc. 27-3). Plaintiff did not use the term gynecomastia nor did he indicate that he had received a medical diagnosis in 2009. Further, Dr. Moran acknowledged during his deposition that he did not diagnose Plaintiff as having gynecomastia in 2009; he did not see Plaintiff as a patient in 2009; he never saw records documenting or corroborating a diagnosis of gynecomastia in 2009; and it was impossible to rule out numerous other causes which could have attributed to Plaintiff's enlarged breasts in 2009. (Doc. 27-2, p. 73, 54, 43, 58-59). Accordingly, there is no evidence, not even Plaintiff's own oral medical history, which supports a diagnosis of gynecomastia in 2009. As such, the entirety of Dr. Moran's opinion lacks reliability.

3

The opinion is further based on speculation as Dr. Moran's conclusion that Plaintiff's 2009 gynecomastia was caused by Risperdal was based on a temporal connection between his use of the drug and the development of enlarged breasts as well as his experience in seeing patients at the VA hospital who developed gynecomastia as a result of taking Risperdal. (Doc. 27-2, p. 71). Even assuming there was a diagnosis of gynecomastia in 2009, Dr. Moran failed to support his opinion as to causation by referencing any scientific literature. He failed to exclude any other potential causes for alleged gynecomastia enlarged breast, and he failed consider and discount Plaintiff's own medical records from the pertinent time frame reflecting physical examinations, including chest wall examinations, wherein there was no indication of enlarged breast much less gynecomastia.

### III. CONCLUSION

Dr. Moran's report is based wholly on speculation that Plaintiff was diagnosed with gynecomastia in 2009. Plaintiff has failed to prove by a preponderance of the evidence that the testimony or the evidence is reliable. Accordingly, all evidence and testimony presented by Dr. Moran shall be excluded, and

**IT IS HEREBY ORDERED** that the motion to exclude plaintiff's expert witness, Timothy P. Moran, M.D. is **GRANTED**.

**SIGNED** this 16th day of December, 2016, at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT